UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                  Plaintiff,

      -against-

SEARL DARBASIE,

                                Defendant.
-----------------------------------------------------------x

MEMORANDUM AND ORDER

14-cr-311 (ENV) (VMS)

VITALIANO, D.J.

On June 4, 2014, defendant Searl Darbasie pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On November 13, 2015, the Court imposed sentence but reserved decision on restitution.

In line with 18 U.S.C. § 2259, though not in derogation of the victim's right to be heard as provided in the Crime Victims' Rights Act, 18 U.S.C. § 3771, it is the government's burden to establish the restitution amount on behalf of any victim. Undergirding this process is the pre-sentence investigation report ("PSR") prepared by the United States Probation Office. The PSR confirmed that, among the hundreds of images and videos found in Darbasie's possession, were 10 series of child pornography contraband material in which victims have already been identified by law enforcement.[1] Notice to all was provided, but only two of the identified victims, a victim from the "Marineland" series and a victim identified by the pseudonym "Cindy,"[2] have actually

---

[1] Not all series, however, are limited to single victims; indeed, certain of the series in Darbasie's possession, such as the Marineland series, involve as many as six victims.

[2] To preserve the confidentiality of the victims, law enforcement use pseudonyms to refer to the women depicted in these series and, in the case of series featuring multiple victims, code

sought restitution in this case individually and for a specific amount. The government, nevertheless, in its current approach to restitution in a decidedly uncharted field, seeks award of $3000 to each known victim, notwithstanding the absence of a claim, purportedly in keeping with the Supreme Court's recent decision in Paroline v. United States, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014). If nothing else, the government's proposed application of Paroline to the facts here helps crystalize the issue.

## Background[3]

In April 2013, special agents from Homeland Security Investigations ("HSI") were investigating peer-to-peer file sharing computer programs seeking files storing child pornography.[4] On April 20 and 25, 2013, HSI agents identified a computer from a specific Internet Protocol ("IP") address that was connected to the internet and contained files that agents recognized as storing child pornography images and videos. The agents directly connected to the computer at the IP address and downloaded three files, which, in fact, contained child pornography. Agents later determined that the IP address was registered to Darbasie's residence.

On February 6, 2014, HSI agents executed a search warrant at defendant's residence in Brooklyn. During that search, Darbasie agreed to be interviewed by the agents. He admitted that he watched and downloaded child pornography, even though he knew it was "not right." He

---

names for the series themselves. Victims are referenced by these pseudonyms and code names in this opinion.

[3] The background facts are taken from the PSR, the sentencing hearing and the sentencing memorandum and its addendum, including victim impact statements and other restitution-related submissions.

[4] Peer-to-peer file sharing systems utilize a program that allows files on one user's computer to be shared with users of other computers with the same program, which enables users to upload and download various files from one another.

2

told how he began watching child pornography after viewing a news special about a woman who, as a child, was forcibly cast into pornographic videos. At first, he said, he searched the internet for those specific videos, but afterward began to search for and view child pornography for sexual gratification. Like many other voyeurs of child pornography, Darbasie admitted to using a peer-to-peer file-sharing program to download this material. He had also downloaded child pornography, he said, on a computer he owned prior to the execution of the search warrant, but, he claimed, it was damaged by Hurricane Sandy and stolen when he left it in his yard to dry out. The admission showed, in sum, that his viewing temporally and quantitatively had been significant.

The fruits of the search included seizure of one computer hard drive, one laptop computer and several CDs and DVDs. A forensic examination of the computer revealed 600 videos and approximately 100 images of child pornography in the "downloads" folder. These files included graphic depictions of prepubescent females engaging in oral, vaginal and anal sex with adult males and young boys.

On June 4, 2014, Darbasie pled guilty to a single-count information charging that at the time of his arrest, he possessed child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On November 13, 2015, the Court sentenced him to 27 months in prison to be followed by five years' supervised release. The Court reserved its decision on restitution in the event the parties wished to have a separate hearing on that subject. Both Darbasie and the government declined a hearing and, therefore, rested their arguments on the papers filed with the Court.

As previewed earlier, the filings related to individual victims are hardly as uniform as the government's uniform request for individual awards of restitution. Two, but only two, of the identified victims, a victim identified in the Marineland series and Cindy, have actually

requested restitution in specific amount. Specifically, the victim identified in the Marineland series seeks a total restitution amount of approximately $2.75 million, against which 33 orders of restitution have already been entered. This victim's counsel contends that Darbasie's share should be computed at $25,000 for general losses and $1500 in attorney's fees. The victim in Cindy has submitted a total restitution claim for approximately $1.4 million, apparently relying upon the government to calculate Darbasie's individual share. Additionally, following preparation of the PSR, counsel for one of the other victims identified in the Lighthouse series notified the government of that victim's intention to submit a claim for restitution, which, to date, has not been submitted. No other identified victim has submitted a claim for restitution or voiced any intention to do so. Indeed, one victim has advised that she has been made whole and expressly requests that no further amounts be awarded or paid to her. Notwithstanding the disparate positioning of the victims, the government has proposed that Darbasie be ordered to pay restitution to each identified victim in the amount of $3000 apiece.

## The Right to Restitution

Title 18 U.S.C. § 2259 requires the sentencing court to award restitution to, among others, victims of the crime of possessing child pornography and to do so in "the full amount of the victim's losses as determined by the court." The statute goes on to define the "full amount of the victim's losses" to include:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(3). While the statute encompasses a broad array of potential losses subject to restitution, the calculation of such restitution must rest on a showing of a causal connection between an item of loss and the crime. Complicating the task, § 3664, which governs the calculation of restitution, provides that, "if more than one defendant has contributed to the loss of a victim, the court may . . . apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

In presumed recognition of the potential pitfalls and puzzlements inherent in this process, the Supreme Court announced its decision in <u>Paroline</u>, which sought to clarify the method of calculating restitution in child pornography cases. As a broad-stroke standard, the Court provided the following rule:

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court properly applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

134 S. Ct. at 1727.

Written to command Olympic effort, <u>Paroline</u> offers precious little practical guidance to the trial bench charged with its implementation. In pronouncing its rule of decision, <u>Paroline</u> did sketch out subject touchstones addressing "the question of how district courts should go about determining the proper amount of restitution":

> [1] the number of past criminal defendants found to have contributed to the victim's general losses; [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or

5

convicted); [4] whether the defendant reproduced or distributed images of the victim; [5] whether the defendant had any connection to the initial production of the images of the victim; [6] how many images of the victim the defendant possessed; and [finally] any other facts relevant to the defendant's relative causal role.

Id. at 1728. At bottom, with apparent feeling for the inherent difficulties in balancing these factors, the Paroline Court simply encouraged district courts to "do their best." Id. Importantly, Paroline provided a tipping point, noting that throughout the process of restitution calculation, it is the "government . . . [that] bears the burden of proving the amount of a victim's losses" by a preponderance of the evidence. Id.

## Discussion

As noted, the government has requested that restitution in the amount of $3000 be awarded across the board to each of the identified victims, regardless whether they have filed requests for restitution or, if they have, the amounts they have requested. It is but a starting point for the application of the Paroline factors in any event. In classic common law fashion, trial courts have begun to apply the standards Paroline set in motion, developing precedential trails to follow.

Included among these precedents is this Court's decision in United States v. DiLeo, 58 F. Supp. 3d 239 (E.D.N.Y. 2014), which was decided a few short months after Paroline. DiLeo highlights the now-continuing difficulties that must be faced in Darbasie's case and others like it. There are the usual differences, too. DiLeo, for instance, involved only one identified victim, as opposed to, at last count, as many as 18. Additionally, the victim in DiLeo made a clear restitution demand, whereas only two of the victims have done so here. Finally, and significantly, in DiLeo, the government provided the Court with "numerous psychological evaluations and reports, victim and family impact statements, and forensic economic projections with analytical underpinnings." United States v. DiLeo, 58 F. Supp. 3d at 243. In the present

case, nothing has been provided for the overwhelming majority of victims, and not much for the rest.

To comprehend the difficulties the Paroline factors present, it is important to understand that in DiLeo, with the benefit of the voluminous materials submitted in support of a restitution award and the simplicity of a single victim with a clear restitution demand, the Court found the task of navigating those factors "akin to piloting a small craft to safe harbor in a Nor'easter." DiLeo at 244. With such underpinnings missing here, the seas are far more treacherous. Stated more concretely, the fundamental problem presented in Darbasie's case is that, other than the existence of similar awards computed in similar instances, nothing in the government's filings gives a plausible explanation as to how it arrived at its blanket suggestion to award restitution to each identified victim in the amount of $3000. If that amount bears any connection to the restitution grounds for any of the identified victims, it is a well-guarded secret. In keeping with the oddities of the process, the explanation presumed by the Court was provided at Darbasie's sentencing by his counsel, who noted that the requested amount of $3000 seemed "reasonable" because "in this courthouse, people have been imposing between $2,000 and $3,000 of restitution in cases like this." Transcript of Record, People v. Darbasie, 14-cr-311 (E.D.N.Y. Nov. 13, 2015) ("Tr.") at 9.[5] Aside from the de fide offer that such awards had been ordered, there has been no substantial showing of how the amount was derived. Nor has there been any citation, as the government agreed it would endeavor to provide, Tr. at 14-15, to any case where restitution was ordered for a victim who had made no claim to it.

It should be clear by now for sure that "restitution" in child pornography cases is a minefield. On the most elementary level, "demandless" restitution awards seem to defy the very

---

[5]  Indeed, $2000 was the amount of restitution imposed in DiLeo. See DiLeo at 249.

7

reasons our legal system affords the remedy. DiLeo, for example, noted the limiting principle imposed by "the logical construct that the totality of restitution cannot exceed the totality of actual loss suffered by the identified victim." DiLeo at 244. It is a conclusion deduced from the meaning of "restitution," which Miriam Webster's defines as "an act of restoring or a condition of being restored as . . . a making good of or giving an equivalent for some injury." *Merriam-Webster Online Dictionary*. 2015. http://www.merriam-webster.com/dictionary/restitution (17 Feb. 2016). It is not safe, moreover, to assume uncompensated loss. Indeed, the government acknowledges that, though covered by its across-the-board request, the victim known as "Tara" has already received the full amount of her restitution claim and had done so as of November 2010. She has expressed her desire that no further restitution be sought from Darbasie or be paid to her. Such a gross disconnect between the victim and her government advocate is the most extreme harm potentially present when the individual victim is not required to file an individualized and factually supported demand for restitution.

This reflexive system of restitution that lies at the core of the government's across-the-board request, though in line with the "everyone must pay" ethos of Paroline, undermines the essential restitution framework, though modified by its guideposts, which Paroline reaffirms; that is, "to define a causal standard that effects the statute's purposes, not to apply tort-law concepts in a mechanical way in the criminal restitution context." Paroline v. United States, 134 S. Ct. 1710, 1729, 188 L. Ed. 2d 714 (2014). Nor does a reflexive across-the-board approach seeking restitution for victims who make no claim survive application of the Paroline guideposts.

Paroline, as observed earlier, does not disturb the essential nature of restitution – a remedy designed to compel the criminal to make his victim whole. It is personal; it can vary among multiple victims of the same criminal act. The personal nature of the remedy does not,

however, bar a sentencing court from weighing victim claims for analytical purposes. The government, which bears the responsibility of safeguarding the interests of victims in the restitution process, 18 U.S.C. § 3664(e), has here advanced restitution claims for approximately 18 victims. See Victim Impact Statement. And, again, in pursuit of the remedy, it seeks $3000 uniformly for each victim from Darbasie as restitution. See Addendum to PSR at 2. Darbasie advises that the amounts sought for these victims are within the range of reason. Tr. at 9. Notwithstanding the uniformity of the government's restitution demands and Darbasie's passive resistance to them, the claims are not uniform; they fall into three different categories. Analytically, the Paroline factors must be applied to each of the categories and, as necessary, to individual claims within those categories.

Among the approximately 18 victims of Darbasie's crime that the government has been able to identify are two who have submitted statements of loss and supporting documentation. The two victims are grouped in this first category for Paroline analysis. One is a victim from the Marineland series. This victim has submitted a statement of loss in the amount of $2.75 million. There are, including Darbasie, the government advises, 34 offenders who have victimized this claimant. In line with the Paroline first step taken in DiLeo, the arithmetic share for each is approximately $81,000. Handicapping even this arithmetic formulation proffers nothing with respect to what, if anything, was levied against the other 33 offenders. Nor is any information provided which would enable a reasonable estimation of the number of others who have victimized or re-victimized this claimant.

The basic arithmetic determination of individual offender accountability for the loss suffered by the Marineland victim, assuming all else equal, is still hobbled by the government's offering little else to evaluate the remaining Paroline factors. Though Darbasie maintained his

9

trove of child pornography in a peer-to-peer computer filing system, there is no evidence that anyone other than government agents actually obtained a copy of the image that re-victimized the Marineland claimant from Darbasie's file, much less is there any evidence whatsoever that Darbasie intentionally distributed the image to anyone else. There certainly is not a hint of evidence that Darbasie was in any way involved in the actual production of the image. Additionally, the images at issue here are photographs and not videos, diminishing the level and impact of re-victimization. The stone cold silence of the record, applying Paroline, leads inexorably to the conclusion that aggravating factors are absent. Presumably, it explains the request of the Marineland victim's counsel for a restitution award of $26,500 on a total loss claim of $2.75 million and a known offender equal share of $81,000. With superior knowledge of where Darbasie fits in on the scale of total offenders responsible for the victimization and revictimization of this claimant (past, future, apprehended, and unapprehended) and, perhaps, to avoid equitable readjustments of individual restitution awards, as discussed in DiLeo (see DiLeo at 244), that might be occasioned should restitution payments exceed the amount of claimed loss, the government pegs the appropriate award of restitution to be levied against Darbasie at $3000. It is a sum that, by definition, the government believes is fair on the totality of circumstances and keeps faith with Paroline's injunction that restitution of pornography cases must be meaningful and "not the type of trivial restitution awards the Court disclaims." Paroline at 1744. With no objection from Darbasie, the Court adopts that sum as the restitution to be awarded to the Marineland victim who has made a claim here.

The other victim in this group is Cindy. Even less is known here. Cindy is the only other identified victim who has submitted an individualized request for restitution. All that is known is that she has, through counsel, submitted with supporting documentation a statement of loss in the

amount of $1.4 million. Like the victim in the Marineland series, the images are again photographs and not videos. Cindy's counsel has not attempted to estimate the portion of the total loss for which Darbasie is responsible. The government provides even less. No information is provided as to how many other offenders have been ordered to pay restitution to Cindy or what the total universe of offenders past and future will be. The logic is compelling that the base award of $3000 in restitution, ordered for the Marineland victim on a significantly higher claim of total loss, is, as sought by the government, the appropriate restitution award for Cindy to be entered against Darbasie.

"Vicky" is a group of one. This victim has been long identified and, given her past pursuit of restitution, is well known to the Court. Indeed, her claim was the principal focus of the decision in DiLeo. There, this Court applied the Paroline factors to a more well-developed array of facts. The victim had placed her loss amount at approximately $1.1 million; had, as of then, received approximately $600,000; and was the subject of 475 child pornography restitution awards, and counting. The Court indicated its grave concern that the pace of the restitution orders would outpace the claimed loss and, perhaps, force the courts to "become unseemly paymasters smoothing out restitution contributions among pornographers" who had victimized her. DiLeo at 244. On that basis, the government's request for a restitution award in the amount of $3000 was rejected and an award of $2000 was ordered instead. Id. at 249. On the facts presented here, there is no basis to revisit that reasoning or the conclusions reached. As a consequence, a restitution award in the amount of $2000 will be entered for Vicky and against Darbasie in this case as well.

That leaves the other victims the government has been able to identify that have not filed

a specific claim or, either through personal counsel or the government, proof of specific loss.[6] On this silent record, nonetheless, the government seeks separate awards of $3000 for each of the victims it has been able to identify (except, as previously noted, for Tara, who seeks no further restitution). The government's demand concretely raises the specter discussed in DiLeo. The request goes a long way toward divorcing restitution from its current nature as a means to compensate for an established loss and toward the award being simply another form of punishment for retribution, especially with the absence of admissible proof permitting the Court to perform a Paroline analysis even in a superficial way. Pared to the bone, what remains is the request for an award of restitution for each identified victim that has been advanced by the government, the absence of opposition by Darbasie to the $3000 sought for each identifiable victim and the mandate of Paroline that a sum more than "trivial," Paroline at 1744, be awarded. Though the process here is no less awkward than it was in DiLeo, it must suffice for now.[7] As for each of these remaining identified victims except Tara, as the government asks, a restitution

---

[6] The Addendum to the PSR indicated that a victim from the Lighthouse series intended to submit a claim for restitution. As of the date of this order, no such claim has been received. Accordingly, this victim's claim will be included along with those of the other identified victims who have not filed specific and supported claims for retribution.

[7] The Paroline factors, mandating the consideration of vagaries and imponderables, reflect the split personality of its policy intendment – restitution and retribution. It cries out for a legislative resolve. See DiLeo at 248-49. Given the sad reality of the vastness of the Internet theater for these offenses, perhaps a separate carve out from the Crime Victims' Rights Act is appropriate for downloaders and passive re-distributors of child pornography. In the stead of the nightmarish current process, a system might be created based on a special assessment format, say in the amount of $3000 for each of the identified victims of a given offender, to be placed in a nationwide trust fund against which victims may file an appropriate claim for full value as supported by the admissible proof they can muster. In this way, the true objective of restitution can be honored, victims will be made whole but not beyond, the late and early identified offenders will be treated equally and, to the extent that the special assessment fund runs a surplus, it can be used for related purposes without harm to the nature of restitution as an individualized remedy.

12

award for each in the amount of $3000 will be entered against Darbasie.

## Conclusion

For the foregoing reasons, defendant is ordered to pay restitution in the amount of $2000 to Vicky and $3000 to each of the other identified victims, with the exception of Tara.

The Clerk of Court shall enter that award in the Criminal Judgment entered in this case.

So Ordered.

Dated: Brooklyn, New York
February 27, 2016

/s/ USDJ VITALIANO
_____
ERIC N. VITALIANO
United States District Judge